## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CITICORP VENDOR | : | Civ. Action No. 06-3720(NLH) |
| FINANCE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PIXEL IMAGING INTERNATIONAL, | : | |
| INC., BEHNAZ VAHDAT, | : | |
| a.k.a. VAHDAT BEHNAZ, and | : | |
| DAWOOD PARVIZI, | : | |
| Defendants. | : | |

**APPEARANCES:**

William G. Wright, Esquire
Farr, Burke, Gambacorta & Wright, PC
Atrium One
Suite 401, 1000 Atrium Way
Mt. Laurel, NJ 08054

   *Attorney for Plaintiff*

Andrew Michael Carroll, Esquire
Law Office of Andrew M. Carroll
1228 Berlin Road
Voorhees, NJ 08043

   *Attorney for Defendants*

**HILLMAN**, District Judge

   This matter has come before the Court on Plaintiff's second
motion for summary judgment in its favor on its claims against
Defendants for Defendants' breach of two lease agreements for
large format printers.  Plaintiff has also moved for attorney's
fees and costs.  Defendants have not opposed this motion.

   Previously, Plaintiff's first motion for summary judgment
was denied without prejudice on August 8, 2007.  Plaintiff has
addressed the Court's concerns raised in its August 8, 2007

Opinion, and for the reasons expressed below, Plaintiff's motion will now be granted.

## <u>BACKGROUND</u>

Defendant Pixel Imaging International, Inc. ("Pixel"), which is in the business of large format printing and specializes in car graphics, vehicle wraps, building wraps, vinyl banners, and trade show booths, entered into two lease agreements with Ilford Imaging USA, Inc. ("Ilford") for two large format printers.  The parties entered into the first lease agreement, Master Agreement number 2333390, on July 31, 2000 for a Model 2360 large format three-meter printer.  The lease was for a term of sixty months and called for monthly payments of $4,960.28.  Defendants Behnaz Vahdat, also known as Vahdat Behnaz, and Dawood Parvizi executed a personal guaranty to "unconditionally guarantee[] to [Ilford] prompt payment when due of" their obligations to Ilford under the lease agreement.  Ilford then assigned the lease to Plaintiff Citicorp Vendor Finance, Inc. ("Citicorp").

Defendants and Ilford entered into a second lease agreement, Master Schedule number 2333392, on September 24, 2001 for a Model 5300 large format five-meter printer.  The lease was for a term of sixty months and called for monthly payments of $8,928.40.  An amendment to the lease was entered into on October 3, 2001 to reflect an additional piece of equipment whereby the monthly rental payment was amended to $9,331.98.  Defendants Behnaz

2

Vahdat and Dawood Parvizi again executed a personal guaranty, and Ilford assigned the lease to Plaintiff Citicorp.

As of the December 2003 payment for the first lease and as of the August 2003 payment for the second lease, Defendants had breached the lease agreements by failing to pay the monthly rental payments.[1]  Pursuant to the lease agreements, Plaintiff elected to declare Defendants in default, and demanded immediate payment within ten days of the unpaid rental payments, the present value of any remaining rental payments, the value of the equipment at the end of the lease term, interest, collection fees, attorney's fees, and court costs, minus any security deposits paid.  Defendants failed to respond to Plaintiff's demand letters and did not make any further payments.  Plaintiff then instituted the present action against Pixel, Behnaz Vahdat and Dawood Parvizi, jointly and severally, for the breach of the two lease agreements.  Defendants answered the Complaint, but have failed to oppose both of Plaintiff's motions for summary judgment.

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied

_____

[1]As explained below, Defendants' last payment on the first lease was received in November 2004 and their last payment on the second lease was received in July 2004.  Plaintiff did not declare Defendants to be in breach of the agreements until June 2006.  (See Compl. Exs. D, E.)

that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

In circumstances where a nonmoving party fails to oppose the motion, Fed. R. Civ. P. 56(e) provides that the court may only grant the moving party's motion for summary judgment "if appropriate." A moving party's motion is appropriately granted when that party is entitled to judgment as a matter of law, and the court "will accept as true all material facts set forth by

4

the moving party with appropriate record support." <u>See</u> <u>Anchorage</u>
<u>Assocs. v. V.I. Bd. of Tax Review</u>, 922 F.2d 168, 175 (3d Cir.
1990).

    **B.   Analysis**

    Paragraph 11 of the Master Agreement, which governs both
leases, sets forth the various remedies in the event of default.
It provides, in relevant part,

> Default and Remedies: If you (a) fail to pay rent or
> any other payment hereunder when due . . . you shall be
> in default under the Agreement and, we may . . .
> exercise any one or more of the following remedies; (i)
> declare due, sue for and receive from you the sum of
> all rental payments and other amounts then due and
> owing under this Agreement or any schedule thereto,
> plus the present value of . . . (y) the anticipated
> value of the Equipment at the end of the initial term
> or applicable renewal term of the Agreement (but in no
> event less than 15% of the original cost of the
> Equipment) discounted at the rate of 6% per annum . . .
> (ii)  . . . accelerate the balances due under any other
> agreements between us; (iii) to take immediate
> possession of the Equipment . . . (v) require you to
> return all Equipment at your expense to a place
> reasonably designated by us, (vi) to charge you for all
> the expenses incurred in connection with the
> enforcement of any of our remedies including all costs
> of collection, reasonable attorney's fees and court
> costs.

(Pl.'s Ex. A.)

    Paragraph 11 of the Master Agreement further provides that
Plaintiff may collect an administrative charge to offset
collection expenses at the rate of ten cents per one dollar for
each such delayed payment.  It also provides that Plaintiff shall
apply any security deposits paid by Defendants to cure any

5

default.

Paragraph 9 of the Master Agreement, which concerns taxes
and fees, is also applicable.  It provides,

> You agree to pay when due or reimburse us for taxes,
> fees, fines and penalties relating to use of ownership
> of the Equipment or to this Agreement, now or
> hereinafter imposed, levied or assessed by any state,
> federal or local government or agency.

(Pl.'s Ex. A.)

Plaintiff contends that it is entitled to judgment in its
favor and should be awarded the foregoing remedies because there
is no issue of disputed fact that Defendants defaulted on their
obligations under the lease agreements.  For each of the leases,
Plaintiff has submitted a spreadsheet of Defendants' payment
history, its calculation of damages for unpaid rental payments,
anticipated value of equipment at the end of the lease term,
unpaid property taxes, unpaid late charges, and "other charges,"
less any security deposit.  This calculation does not include
costs of collection, attorney's fees, or court costs.  Plaintiff
has also submitted a certification for attorney's fees.

In their Answer, Defendants have admitted that they entered
into these two leases, and were required to pay $4,960.28 per
month for the first lease, and $8,928.40 per month for the second
lease, for a total of sixty months for each lease.[2]  Defendants

---

[2]Plaintiff's complaint does not reference the amendment to
the second lease, which raised the monthly payment to $9,331.98.
Evidence provided by Plaintiff, however, demonstrates that

have denied, however, that they breached the agreements.  Thus, it is undisputed that the parties entered into the two lease agreements, and that the terms of the agreements govern, but it is disputed whether Defendants breached the agreements.  Because that fact is disputed, it is Plaintiff's burden to demonstrate that no material facts exist as to whether Defendants were in default of the agreements.

In its first motion for summary judgment, to support its claim that Defendants breached the lease agreements by failing to make their rental payments, Plaintiff submitted a certification of John M. Kruse, Vice President of Citibank, N.A., which services the lease accounts for Plaintiff.  In his certification, Kruse stated that "Defendant Pixel has defaulted in the payments due under the First Pixel Lease having failed to make the rentals when due," and that "Defendant Pixel has defaulted in the payments due under the Second Pixel Lease having failed to make the rentals when due."  (Kruse Cert. ¶¶ 10, 18.)  Plaintiff also submitted two letters from its attorney addressed to Defendants that inform Defendants that they have defaulted on their agreements, and demand immediate payment from them.  (Pl.'s Ex. D, E.)  This was the only evidence submitted by Plaintiff to support its contention that Defendants breached the lease agreements.  As a result, the Court held that Plaintiff's

_____

Defendant Dawood Parvizi signed the amendment on October 3, 2001.

evidence was insufficient to prove as a matter of law that Defendants breached the agreements because Plaintiff failed to provide facts demonstrating that Defendants actually failed to pay rent when due.

In support of its second motion for summary judgment, Plaintiff has provided the requisite proof.  Kruse has submitted another certification, which details Defendants' payment history to Plaintiff.  (See Kruse Cert., Exs. C & E.)  For the first lease, four payments were returned for insufficient funds, and ultimately, the last payment Plaintiff received was on November 1, 2004 for the November 1, 2003 rental payment.  For the second lease, seventeen payments were returned for insufficient funds, and the last payment Plaintiff received from Defendants was on January 27, 2004 for the July 5, 2003 rental payment.

Plaintiffs have demonstrated that Defendants violated their lease agreements because Defendants defaulted on the first lease as of the December 2003 payment and defaulted on the second lease as of the August 2003 payment.  Pursuant to the lease agreements, Defendants' default entitles Plaintiff to: (1) the sum of all rental payments and other amounts then due and owing under this Agreement or any schedule thereto, plus the present value of the anticipated value of the Equipment at the end of the initial term or applicable renewal term of the Agreement (but in no event less than 15% of the original cost of the Equipment) discounted at the

8

rate of 6% per annum; (2) accelerate the balances due under any other agreements between us; (3) to take immediate possession of the Equipment; and (4) to charge Defendants for all the expenses incurred in connection with the enforcement of any of Plaintiff's remedies including all costs of collection, reasonable attorney's fees and court costs.

For the first lease, this totals $131,095.71, not including costs of collection, attorney's fees, or court costs. (Kruse Cert. ¶ 16.) For the second lease, this totals $416,566.38, not including costs of collection, attorney's fees, or court costs. (Id. ¶ 30.) Plaintiff is entitled to these damages.

As permitted under the master lease agreements, Plaintiff is also entitled to costs of collection, attorney's fees, and court costs. Plaintiff's counsel has submitted a certification, which details his and his paralegals' work on the case from June 28, 2006 through January 25, 2007. The total attorney's fees for that period is $6,120.50.[3] (Wright Cert. at 8.) The total costs for prosecuting the case is $718.74. (Id.)

A review of counsel's certification demonstrates that the attorney's fees and costs are reasonable, and contemplated by the agreements signed by Defendants. See North Bergen Rex Transport, Inc. v. Trailer Leasing Co., 730 A.2d 843, 848 (N.J. 1999)

---

[3]This total does not include fees for any work performed after the filing of the first motion for summary judgment.

(stating that "[a]lthough the basic approach and philosophy regarding the allowance of counsel fees has been that sound judicial administration is best advanced if litigants bear their own counsel fees, a party may agree by contract to pay attorneys' fees" (citations omitted)).  Consequently, Plaintiff is entitled to these damages as well.


## CONCLUSION

For the reasons expressed above, Plaintiff's motion for summary judgment will be granted.  An appropriate order and judgement will be entered.


Dated: April 9, 2008                      s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

10